## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Arizona Civil Constructors, Inc., | Case No.: 2:20-cv-00010-JAD-DJA |
|     Plaintiff | |
| v. | |
| Colony Insurance Company; HDI Global Specialty SE, fka International Insurance Company of Hanover SE; Midwest Family Mutual Insurance Company; Does I-X, inclusive; and Roe Corporations I-X, inclusive, | **Order Granting Defendant Midwest Family Mutual Insurance Company's Motion to Dismiss**<br><br>[ECF No. 10] |
|     Defendants | |

Plaintiff Arizona Civil Constructors sues its insurance carriers for breach of contract and tortious and contractual breaches of the duty of good faith and fair dealing after they refused to defend Arizona in its litigation over remodeling work at the Gipsy nightclub in Las Vegas.[1] Midwest Family Mutual Insurance Company moves to dismiss Arizona's claims against it, arguing that the Midwest policy excludes coverage for Arizona's claim, in large part because the underlying suit with Gipsy fails to allege covered damage to the property.[2]  Because Arizona does not allege sufficient property damage that might trigger the benefits of its insurance policy with Midwest, I grant its motion to dismiss.  But I give Arizona leave to amend if it can plausibly allege (1) accidental damage, as well as (2) damage to the unimproved portions of the Gipsy nightclub that cannot be remedied by Arizona's fulfillment of the contract or repair/removal of its deficient work, damage to Arizona's own work caused by its subcontractors, or other damage covered by the Midwest policy.

---

[1] ECF No. 1-2 (complaint).

[2] ECF No. 10.

**Background**

**A.      The underlying dispute**

In 2013, Arizona contracted with Gipsy LLC to remodel the Gipsy nightclub.[3]  Progress on the remodel took longer than anticipated and the parties grew increasingly unhappy, culminating in Arizona filing a lawsuit against Gipsy, its manager Jerry Masini, and others in the Nevada state court.[4]  In turn, Gipsy, Nite Owl, LLC, and Masini counterclaimed against Arizona and its president Steven Palacios for "defective and/or non-conforming work" on the nightclub, alleging breaches of contract and the implied covenant of good faith and fair dealing, as well as claims for fraud, unjust enrichment, conversion, and intentional interference with contractual relations.[5]  In its amended counterclaim, Gipsy alleged that Arizona "abandoned the project having completed less than 50%" of it; submitted fraudulent invoices for work; failed to pay subcontractors, performed unpermitted, substandard, and unauthorized work; and exceeded the approved budget.[6]  Gipsy also claimed that Arizona's substandard work limited its ability "to secure an architect or engineer" to continue work on the remodel because of the "existing structural and substandard work-related issues contained on the property."[7]  Gipsy bemoaned that finishing the remodel "will likely require much of the work completed to date to be removed and reconstructed."[8]

---

[3] ECF No. 1-2 at ¶¶ 20–22.

[4] *Id.* at ¶ 16.

[5] *Id.* at ¶¶ 16, 18, 29.

[6] ECF 10-1 at ¶¶ 16–19, 29 (amended counterclaim).

[7] *Id.* at ¶ 20.

[8] *Id.* at ¶ 21.

**B.      Midwest's insurance policy**

During the relevant period, Midwest insured Arizona under an artisan contractor insurance policy.[9]   The policy provided, in part, that Midwest would defend and indemnify Arizona for any suit seeking damages for "bodily injury," "property damage," or "personal and advertising injury," subject to certain exclusions and restrictions.[10]   The policy defined "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property," as well as "loss of use of tangible property that is not physically injured."[11] Coverage for suits involving "property damage" would only be covered if the damage was caused by an "occurrence," which the policy defined as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions."[12]

Certain exclusions further limited the scope of coverage under the policy.  In relevant part, the Midwest policy did not cover:

> **Damage To Your Work** [Exclusion M]. "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".  This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

> **Damage To Impaired Property Or Property Not Physically Injured** [Exclusion N].  "Property damage" to "impaired property" or property that has not been injured, arising out of:

> (1) A defect, deficiency, inadequacy[,] or dangerous condition in "your product" or "your work"; or

> (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

---

[9] ECF No. 1-2 at ¶ 11.

[10] *Id.* at ¶ 13; *see also* ECF No. 10–3 at 59.

[11] ECF No. 1-2 at ¶ 14; *see also* ECF No. 10–3 at 73.

[12] ECF No. 10-3 at 59, 73.

**Recall Of Products, Work[,] Or Impaired Property** [Exclusion O]. Damages claimed for any loss, cost[,] or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal[,] or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work[,] or property is withdrawn or recalled from the market or from use by a person or organization because of a known or suspected defect, deficiency, inadequacy[,] or dangerous condition in it.[13]

Impaired property is expressly defined in the policy:

**Impaired property** means tangible property, other than "your product" or "your work", that cannot be used or is less useful because: (a) It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate[,] or dangerous; or (b) you have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by: (1) the repair, replacement, adjustment[,] or removal of "your product" or "your work"; or (2) Your fulfilling the terms of the contract or agreement.[14]

C.      **The instant coverage action**

After Gipsy filed its amended counterclaim against Arizona, Arizona notified Midwest and its other insurers of the suit and requested that they defend and indemnify it.[15]  The insurers declined to do so.[16]  Arizona ultimately settled its suit with Gipsy for $940,000, of which it was

---

[13] *Id.* at p. 65.

[14] *Id.* at p. 71.

[15] ECF No.1-2 at ¶¶ 31–32.

[16] *Id.*

4

required to pay $586,664.06.[17]  It then filed this coverage lawsuit against the insurers in state

court, alleging that their failure to defend and indemnify Arizona was a breach of contract and

violation of the implied covenant of good faith and fair dealing.[18]  Colony Insurance Company

timely removed the action to this court.[19]

**D.     Midwest's motion to dismiss**

Midwest moves to dismiss Arizona's claims, arguing that Arizona cannot show a breach

of contract because it has failed to allege a covered "occurrence" caused property damage within

the meaning of the insurance policy.[20]  Midwest also argues that the policy exclusions preclude

coverage for Arizona's claims.[21]  With respect to Arizona's tortious and contractual breach of the

implied covenant of good faith and fair dealing claims, Midwest argues that Arizona's

allegations are duplicative of its breach of contract claims and that Arizona has failed to allege

facts demonstrating Midwest's "bad faith" in denying coverage.[22]

**Discussion**

A properly pleaded complaint must contain "a short and plain statement of the claim

showing that the pleader is entitled to relief."[23]  While Federal Rule of Civil Procedure 8 does

not require detailed factual allegations, it demands more than "labels and conclusion" or a

"formulaic recitation of the elements of a cause of action."[24]  "Factual allegations must be

---

[17] *Id.* at ¶¶ 33–34.

[18] ECF No. 1-2.

[19] ECF No. 1-1.

[20] ECF No. 10 at 9.

[21] *Id.* at 9–13.

[22] *Id.* at 14–15.

[23] Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[24] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

enough to rise above the speculative level."[25]  To survive a motion to dismiss, a complaint must "contain enough facts to state a claim to relief that is plausible on its face."[26]

In ruling on a Rule 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.[27]  Otherwise, the motion must be converted into one for summary judgment. Arizona relies on several documents outside of its complaint to respond to Midwest's motion to dismiss, including its expert's deposition testimony and certain expert reports.  While I may consider documents that the complaint incorporates by reference if the plaintiff "refers extensively to the document or the document forms the basis of the plaintiff's claim," merely mentioning a document in the complaint is not enough.[28]  Arizona's single, conclusory reference to these experts' opinions in paragraph twenty-nine of its complaint falls short of meeting this standard.  So, I will only consider (1) allegations contained in the complaint, (2) documents attached to the as-filed complaint, and (3) any materials properly subject to judicial notice to resolve Midwest's motion to dismiss.  While I recognize that the documents Arizona seeks to offer would provide additional factual support for its claims—and, indeed, these new facts could alter my analysis—a deficient pleading cannot be cured by new allegations raised in a plaintiff's response to a motion to dismiss.[29]  Instead, I grant Arizona leave to amend its complaint to allege the additional facts that these materials describe.

---

[25] *Twombly*, 550 U.S. at 555.

[26] *Iqbal*, 556 U.S. at 696 (internal quotation marks and citation omitted).

[27] *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

[28] *Id.* (holding that a document could not be considered by the district court because it was only briefly mentioned in the complaint).

[29] *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

**A.      Arizona's breach-of-contract claims**

Midwest offers two reasons that Arizona has not pled sufficient facts to plausibly show that Midwest breached its policy by failing to defend Arizona in its suit with Gipsy. First, Midwest argues that the damage described in Gipsy's amended counterclaim was not caused by an "occurrence" within the meaning of its policy, so any damage did not trigger its duty to defend. Second, Midwest argues that Exclusions M, N, and O of its policy exclude the damage described in the amended counterclaim from coverage.[30] Arizona disagrees and contends that it has sufficiently alleged property damage caused by an "occurrence" that is not excluded from coverage under the policy.

Under Nevada law, an insurer "bears a duty to defend its insured whenever it ascertains facts [that] give rise to the potential of liability under the policy."[31] While all doubts as to coverage are "resolved in favor of the insured," the "duty to defend is not absolute."[32] "A potential for coverage only exists when there is arguable or possible coverage" and "[d]etermining whether an insurer owes a duty to defend is achieved by comparing the allegations of the complaint with the terms of the policy."[33]

*1.      An "occurrence" under the Midwest policy*

Arizona has not plausibly alleged sufficient facts showing that the damages were caused

---

[30] Midwest also argues that it is not liable for the damages stated in the stipulated judgment and confession, which Arizona alleges it accrued thanks to Midwest's breach. ECF No. 10 at 15. Arizona disagrees, citing *Century Surety Co. v. Andrew* for its holding that an insurer's breach of its duty to defend is potentially liable for all foreseeable consequential damages, including settlement costs, as a result of its breach. 432 P.3d 180, 824–26 (Nev. 2018). Midwest did not reply and, so the argument is waived.

[31] *United Nat'l Ins. Co. v. Frontier Ins. Co.*, 99 P.3d 1153, 1158 (Nev. 2004).

[32] *Id.*

[33] *Id.*

7

by an "occurrence" within the meaning of the policy.  Interpreting insurance contract terms in Nevada is normally a job for the court.[34]  An ambiguous term is generally construed in favor of the insured and against the insurer.[35]  But "[i]f a provision in an insurance contract is unambiguous, a court will interpret and enforce it according to the plain and ordinary meaning of its terms."[36]

The Midwest policy defines "occurrence" as an "accident" but fails to clarify further what constitutes an "accident."[37]  In such cases, the Nevada Supreme Court has defined "accident" as "a happening that is not expected, foreseen, or intended."[38]  While that court has yet to clarify whether faulty workmanship itself constitutes an accident, other judges in this district have reasoned that faulty workmanship, on its own and without other, independent damage, is hardly an unexpected occurrence during and after construction.[39]  This reasoning accords with decisions from courts nationwide interpreting other states' laws and similar liability insurance policies,[40] including the Ninth Circuit.[41]  I agree with those courts' reasoning and

---

[34] *See Century Sur. Co. v. Casino W., Inc.*, 329 P.3d 614, 616 (Nev. 2014).

[35] *Grand Hotel First Shop v. Granite State Ins. Co.*, 839 P.2d 599, 604 (Nev. 1992) (stating that ambiguous or unclear terms in an insurance contract are resolved in favor of the insured).

[36] *Powell v. Liberty Mut. Fire Ins. Co.*, 252 P.3d 668, 672 (Nev. 2011).

[37] ECF No. 10-3 at 73.

[38] *Beckwith v. State Farm Fire & Cas. Co.*, 83 P.3d 275, 276 (Nev. 2004) (en banc) (internal quotation marks omitted).

[39] *See, e.g.*, *Evanston Ins. Co. v. W. Cmty Ins. Co.*, No. 2:13-cv-01268, 2014 WL 4798536, at *6 (D. Nev. Sept. 26, 2014) (reasoning that faulty workmanship is not unexpected, while the "results" from faulty workmanship could be unexpected); *Big-D Const. Corp. v. Take it for Granite Too*, 917 F. Supp. 2d 1096, 1108 (D. Nev. 2013) ("[T]he Nevada Supreme Court would hold that faulty workmanship itself does not fall under the common meaning of accident, and there is not an occurrence.").

[40] *Big-D Const. Corp.*, 917 F. Supp. 2d at 1108 (collecting cases).

[41] *See, e.g.*, *MW Builders, Inc. v. Safeco Ins. Co. of Am.*, 267 Fed. Appx. 552, 554 (9th Cir. 2008) (applying Oregon law and reciting the rule that, "[f]or a claim of faulty workmanship to give rise

1 adopt their interpretation.

2      Even under this broad definition of "occurrence," however, Arizona has not pointed to

3 plausible allegations—in the Gipsy amended counterclaim or otherwise—showing damage

4 beyond Arizona's own faulty workmanship and failure to perform.  For example, Gipsy claims

5 that "[Arizona] breached the [c]ontract by performing unauthorized work on adjoining

6 properties," which included "tear[ing] down a duplex behind Gipsy Nightclub," as well as

7 "performing substandard work, exceeding the approved budget, and performing work not

8 supported by written change orders."[42]  Likewise, and under its fraud claim, Gipsy alleges that

9 Arizona "knowingly and intentionally created false invoices" and violated promises to secure

10 proper permitting for the remodel.[43]  So, too, with Gipsy's unjust enrichment, breach of the

11 implied covenant, intentional interference with contractual relations, and conversion claims—the

12 latter of which alleges that Arizona wrongfully withheld mosaic tiles purchased by Gipsy and

13 Masini.[44]  These types of claims are not unexpected happenings and, accordingly, do not

14 constitute occurrences within the meaning of the Midwest policy.[45]

15      Arizona appears to impliedly agree with much of this assessment but focuses on two

16 paragraphs of Gipsy's amended counterclaim and a single line of Arizona's complaint in this

17 case, each of which purport to allege damage caused by an "occurrence."[46]  Arizona argues that

18

---

19 to 'property damage'" and constitute an "accident," "a claimant must demonstrate that there is
damage to property separate from the defective property itself").

20 [42] ECF No. 10-1 at ¶¶ 18, 29.

21 [43] *Id.* at ¶¶ 53–56.

   [44] *Id.* at ¶¶ 63, 65.

22 [45] *See Beckwith v. State Farm Fire & Cas. Co.*, 83 P.3d 275, 276 (Nev. 2004) (en banc)
23 (quotation omitted).

   [46] ECF No. 14 at 7.  Arizona also describes allegations regarding damage to the "entire existing
structure, including unimproved portions of the Property" in its stipulation and confession of

1   Gipsy's inability to secure a new architect or engineer due to "existing structural and substandard

2   work[-]related issues contained on the property caused by [Arizona]," as well as Gipsy's

3   statement that "much of the work completed to date" will need to be "removed and

4   reconstructed,"[47] shows damage beyond mere faulty workmanship.  This is far from clear—a

5   plain reading of the first allegation suggests that the defective and substandard "existing" "work"

6   likely refers to Arizona's own work, and not the unimproved portions of the Gipsy nightclub.

7   This conclusion is buoyed by the second allegation that Arizona selects from Gipsy's

8   counterclaim.  It is implausible that the "work completed to date" would include existing

9   structures on the nightclub property that have not been touched by Arizona, and reasonably

10   refers exclusively to Arizona's work.  Absent allegations otherwise, I cannot merely assume that

11   the faulty workmanship and damage that Gipsy complains about is not Arizona's own.

12          The same goes for the assertion in Arizona's complaint that its experts believe the

13   "unimproved portions" of the nightclub "have sustained or will continue to sustain further

14   damage."[48]  Arizona cites to *Big-D Construction Corp. v. Take it for Granite Too*,[49] an opinion

15   penned by another judge in this district, for the proposition that "an unexpected happening

16   _____

17   judgment with Gipsy that mirror the allegations in its complaint.  However, Arizona does not
     state whether or how Midwest was made aware of those allegations at the time that Arizona

18   tendered its claim.  *See United Nat'l*, 99 P.3d at 1158 (providing that insurers have an obligation
     to investigate evidence provided at the time of tender regarding a claim).  Likewise, Arizona
     attaches deposition transcripts and portions of its expert opinions to its response but as I stated

19   above, those documents cannot properly be considered under the incorporation-by-reference
     doctrine.

20   [47] ECF No. 10-1 at ¶¶ 20–21.

21   [48] ECF No. 1-2 at ¶ 29.

22   [49] *Big-D Const. Corp. v. Take it for Granite Too*, 917 F. Supp. 2d 1096, 1108 (D. Nev. 2013).
     Arizona's assertion that *Big-D* contains the predictions of "*this* District Court," *see* ECF No. 14

23   at 6 (emphasis added) is inaccurate.  *See* L.R. IA 7-3(f) ("A decision by one judge in this district
     is not binding on any other district judge . . . and does not constitute the rule of law in this
     district.").

caused by faulty workmanship could be an occurrence" under Nevada law.[50]  But that legal

principle, even if true, does not bridge the gap in Arizona's pleading.  Unlike the *Big-D* plaintiff,

who explicitly alleged that tiles were falling from the building due to faulty workmanship,

forcing the building's owners to close off the area,[51] Arizona provides no detail regarding what,

if any, damage the unimproved portions of the Gipsy nightclub suffered.  Such conclusory

allegations, without more, do not raise more than the speculative possibility that the damage

Gipsy suffered at Arizona's hands extends beyond Arizona's poor workmanship.

### 2.     *Arizona has not plausibly alleged that the property damages are not subject to exclusion under the policy.*

Even were I to find that the damage described in the amended counterclaim was caused

by an "occurrence" within the meaning of the policy, Arizona's allegations regarding its conduct,

as well as the damage and conduct allegations in the Gipsy amended counterclaim, fall squarely

within the policy exclusions M, N, or O.  To prove that an exclusion excludes coverage under a

policy, the insurer must (1) "write the exclusion in obvious and unambiguous language," (2)

show that the insurer's proposed interpretation is the only fair interpretation of the exclusion, and

(3) show the exclusion clearly applies to the claim at hand.[52]  While Midwest does not

conclusively show that Arizona cannot allege damages not subject to exclusion under its

policy—which would be required to dismiss this complaint with prejudice—Midwest is correct

that the current complaint does not plausibly allege property damage covered by the policy.

Exclusion M cabins covered claims for damage to Arizona's workmanship to damage

---

[50] ECF No. 14 at 6.

[51] *Big-D Const. Corp.*, 917 F. Supp. at 1103–04.

[52] *Id.* at 1113 (D. Nev. 2013) (quoting *Powell v. Liberty Mut. Fire Ins. Co.*, 252 P.3d 668, 673 (Nev. 2011) (internal quotation marks omitted)).

that is caused by Arizona's subcontractors.  While Arizona correctly points out that Gipsy's

amended counterclaim discusses Arizona's failure to properly pay its subcontractors,[53] that

failure to pay does not plausibly imply that the work that those contractors performed was itself

defective.  Accordingly, and absent allegations of the subcontractors' defective work, Exclusion

M bars coverage for suits regarding defects in Arizona's workmanship.

Arizona's argument that Exclusion N does not apply is similarly unpersuasive.  Exclusion

N excises policy coverage for "property damage" to "impaired property" caused by Arizona's

deficient work or Arizona's failure to perform its contractual duties.[54]  While Arizona again

impliedly concedes that much of the damage that Gipsy describes would be excluded by this

provision, it maintains that some of the damage does not constitute "impaired property" because

it cannot be restored to use by the "repair, replacement, adjustment[,] or removal" of Arizona's

work or by Arizona fulfilling the terms of the building contract.[55]  But Arizona fails to point to

any non-conclusory allegations in its complaint or Gipsy's amended counterclaim showing this

type of independent, irreparable damage to the nightclub sufficient to evade this exclusion.

Arizona's citation to the Fifth Circuit's decision in *Federated Mut. Ins. Co. v. Grapevine

Excavation Inc.* only confirms my analysis.[56]  In addressing a similar exclusion to Midwest's

Exclusion N, the *Grapevine Excavation* court noted that the deficient work on the parking lot

could only be repaired by "install[ing] an asphalt overlay" over the plaintiff's subpar work,

leaving the subpar work intact.[57]  No similar allegations regarding repair to unimproved portions

---

[53] ECF No. 10-1 at ¶ 19.

[54] ECF No. 10-3 at 65.

[55] ECF No. 14 at 10 (citing ECF 10-3 at 71).

[56] *Federated Mut. Ins. Co. v. Grapevine Excavation Inc.*, 197 F.3d 720, 728 (5th Cir. 1999).

[57] *Id.*

1  of the nightclub exist here.

2          Finally, Arizona's attempts to evade Exclusion O suffer from similar defects.  Arizona

3  again claims that the removal or repair of its defective work will cause damage to the

4  unimproved portions of the Gipsy nightclub and cites to several cases holding that such damage

5  is covered by similar policies.[58]  Arizona does not, however, articulate what damaging repairs

6  are necessary, robbing its allegations of plausibility.

7          Absent allegations showing damage caused by an unexpected or unforeseen event, as

8  well as independent damage to the Gipsy nightclub property or damage to the property that will

9  occur in the process of repairing or completing Arizona's work, I cannot conclude that Arizona

10 has plausibly shown that Gipsy's amended counterclaim should have triggered Midwest's duty to

11 defend.  So, I grant Midwest's motion to dismiss with respect to the first breach of contract claim

12 with leave to amend.  Because I do not find that Arizona's allegations have shown that Midwest

13 had a duty to defend, and because I am granting leave to amend, I need not reach whether

14 Midwest also had a duty to indemnify Arizona and similarly dismiss Arizona's second cause of

15 action with leave to amend.[59]

16

17 **B.      Arizona's claims for tortious and contractual breaches of the implied covenant of
         good faith and fair dealing**

18         Nevada law imposes a covenant of good faith and fair dealing on all insurers that, if

19

20

---

21 [58] ECF No. 14 at 11.

22 [59] *See Allstate Ins. Co. v. Miller*, 212 P.3d 318, 324-25 (Nev. 2009) ("The obligation of the
    insurer in the duty to indemnify is narrower than the insurer's duty to defend."); *see also Zurich*

23 *Am. Ins. Co. v. Ironshore Specialty Ins. Co.*, 964 F.3d 804, 809 n.5 (9th Cir. 2020) (reciting that
    where the insured does not owe a duty to defend, the court need not address the narrower duty to
    indemnify).

violated, can give rise to a bad-faith tort claim.[60]  To prevail on such a claim, a plaintiff must allege that (1) an insurer-insured relationship exists;[61] (2) the insurer breached its duty by refusing to defend or indemnify its insured for a loss covered by the policy;[62] and (3) the denial is without proper cause, meaning the insurer has an "actual or implied awareness of the absence of a reasonable basis for denying the benefits of the policy."[63]  As discussed above, Arizona has failed to allege sufficient facts to show a breach of the contract and, accordingly, has not alleged a tortious violation of the implied covenant of good faith and fair dealing.[64]  And even were Arizona to have wrongfully been denied coverage, mere denial of coverage alone is insufficient to establish bad faith.[65]  Because Arizona offers no allegations about Midwest's actual or implied awareness (i.e., that it had no reasonable basis supporting its decision to deny coverage), Arizona has failed to plausibly state a tortious breach of the implied covenant.

Arizona's claim regarding a contractual breach of the implied covenant of good faith and fair dealing fails for similar reasons.  To prevail on this theory, a plaintiff must demonstrate that the insurer complied with the express terms of the contract but deliberately and intentionally

---

[60] *United States Fid. & Guaranty Co. v. Peterson*, 540 P.2d 1070, 1071 (Nev. 1975).

[61] *Ins. Co. of the West v. Gibson Tile Co., Inc.*, 134 P.3d 698, 702 (Nev. 2006).

[62] *Pioneer Chlor. Alkali Co., Inc. v. Nat'l Union Fire Ins. Co.*, 863 F. Supp. 1237, 1242 (D. Nev. 1994).

[63] *Am. Excess Ins. Co. v. MGM Grand Hotels, Inc.*, 729 P.2d 1352, 1354-55 (Nev. 1986).

[64] *Probuilders Specialty Ins. Co. v. Double M. Const.*, No. 2:13-cv-2156, 2015 WL 1202803, at *5 (D. Nev. Mar. 17, 2015) (dismissing tortious breach of the implied covenant claim where "the duty to indemnify had not been triggered" and so there was no bad-faith violation of the covenant).

[65] *LV Diagnostics, LLC v. Hartford Fin. Serv. Grp., Inc.*, No. 2:17-cv-1371, 2018 WL 651327, at *3 (D. Nev. Jan. 31, 2018) (allegations showing denial of coverage fail to adequately allege that defendant lacked a reasonable basis for its denial or knew it lacked a reasonable basis to deny plaintiff's claim) (citing *Pioneer Chlor Alkali Co. v. Nat'l Union Fire Ins. Co.*, 863 F. Supp. 1237, 1249 (D. Nev. 1994) ("[T]he insurer is not liable for bad faith for being incorrect about policy coverage as long as the insurer had a reasonable basis to take the position that it did.").

14

contravened the intention and spirit of the contract.[66]  Here, and as Midwest correctly points

out,[67] Arizona only alleges that Midwest outright breached the contract, using the same

allegations for its claims for breach of contract and breach of the implied covenant.[68]   This does

not adequately allege literal compliance with the contractual terms required for breach of the

implied covenant.  Arizona offers no rebuttal to this argument in its reply to Midwest's motion.

Accordingly, I dismiss both Arizona's third and fourth claims for contractual and tortious

breaches of the implied covenant of good faith and fair dealing with leave to amend.

**C.      Leave to Amend**

Federal Rule 15(a) states that "[t]he court should freely give leave [to amend] when

justice so requires."  The Ninth Circuit has construed this rule broadly, requiring that leave to

amend be granted with "extreme liberality."[69]  This broad discretion must be guided by the

underlying purpose of Rule 15 to facilitate a decision on the merits rather than on the pleadings

or "technicalities."[70]  I find that leave to amend is appropriate here because it is not apparent that

Arizona is unable to plead facts showing damage to the Gipsy nightclub that might be covered by

Midwest's policy, that its work was damaged by its subcontractors within the meaning of the

policy, or that Midwest acted with bad faith in failing to defend Arizona in its lawsuit with

Gipsy.  Accordingly, I grant Arizona leave to file an amended complaint if it can truthfully allege

---

[66] *Hilton Hotels v. Butch Lewis Prods.*, 808 P.2d 919, 923 (Nev. 1991).

[67] ECF No. 10 at 14.

[68] ECF No. 1-2 at ¶ 62.

[69] *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (citation omitted); *Poling v. Morgan*, 829 F.2d 882, 886 (9th Cir. 1987) (noting "the strong policy permitting amendment" (citation omitted)).

[70] *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981) (citing *Conley v. Gibson*, 355 U.S. 41, 47–48 (1957)).

these facts, which would raise its allegations beyond mere speculation that Midwest breached its contract—as well as committed tortious and/or contractual breaches of the implied covenant of good faith and fair dealing—by failing to defend or indemnify Arizona in its suit against Gipsy. If Arizona chooses to file an amended complaint to cure these pleading defects, it must do so by September 4, 2020.

### Conclusion

IT IS THEREFORE ORDERED that Midwest's motion to dismiss **[ECF No. 10] is GRANTED**.  Arizona's claims against Midwest are dismissed without prejudice and with leave to amend.  Arizona has until September 4, 2020, to file its amended complaint consistent with this order.  If it fails to do so, Arizona's claims against Midwest will be deemed abandoned and dismissed with prejudice.

_____
U.S. District Judge Jennifer A. Dorsey
Dated: August 25, 2020